911 F.2d 732
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David C. FANNIN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-6564.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1990.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and JORDAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant David C. Fannin appeals the district court's judgment affirming the Secretary of Health and Human Services' denial of his claim for supplemental security income benefits. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 David C. Fannin filed an application for supplemental security income benefits on April 7, 1987, alleging that he became disabled on November 14, 1967. His application was denied initially and upon reconsideration. On August 16, 1988, following an administrative hearing, an Administrative Law Judge (ALJ) issued a decision denying benefits. The Appeals Council denied Fannin's request for review, and the ALJ's decision became the final decision of the Secretary.
 
 
 3
 On January 5, 1989, Fannin filed this action in the district court seeking review of the Secretary's decision denying benefits. The case was referred to a magistrate who recommended that the Secretary's decision be affirmed. On October 16, 1989, the district court adopted the magistrate's report and recommendation and entered judgment affirming the Secretary's decision. This timely appeal followed.
 
 B.
 
 4
 Fannin was born on June 16, 1949, and he was thirty-nine years of age at the time of the administrative hearing. Although Fannin is a high school graduate, achievement testing reveals that he functions below the third-grade level in reading, spelling and arithmetic. Fannin has no prior work history because he has never held a public job for pay during his lifetime. Fannin lives with his mother and his two brothers, and he has never lived independent from his family.
 
 
 5
 Fannin alleges disability due to a combination of mental and physical impairments. Fannin principally contends that he is disabled due to mental retardation and a dependent personality disorder. Fannin also alleges disability due to physical impairments, including dizziness and bleeding from his bowels. The ALJ's findings regarding Fannin's physical impairments are not at issue in this case.
 
 
 6
 Fannin principally relies upon a psychological evaluation conducted on July 8, 1987, by Glen E. Rowe, M.S., a certified psychologist at Pathways, Inc. Rowe interviewed Fannin and his mother regarding Fannin's daily activities, and both separately reported that Fannin typically spends his time at home with his family doing housework and yard work. Fannin cooks for himself and helps his mother prepare meals for the family on a daily basis. Fannin is able to use a stove and other kitchen appliances with no difficulty. Fannin's mother told Rowe that Fannin performs household chores adequately and does so on his own initiative without prodding.
 
 
 7
 Fannin occasionally goes to the grocery store and to the post office on his own. Fannin's mother reported that when Fannin goes to the grocery store he does fairly well if he writes down the items he needs. He reported having no difficulty in getting along with store clerks, but he does have some difficulty in counting coins. Fannin requires no assistance with personal hygiene and grooming.
 
 
 8
 Rowe reported that Fannin has an I.Q. 71 which falls in the lower limits of the borderline range of intellectual abilities. Rowe stated that Fannin would be seen as functionally illiterate. Rowe observed that individuals with similar intellectual ability usually function best in unskilled or semi-skilled occupations, but he noted that Fannin has engaged in no gainful employment since leaving high school. Rowe also discussed Fannin's dependence upon his mother, and he concluded that Fannin's "overall functioning appears to be somewhat less efficient than would be expected based upon his measured intellectual functioning." He suggested that Fannin may be a viable candidate for participation in a sheltered workshop program. Rowe diagnosed mild mental retardation and dependent personality disorder with schizoid traits.
 
 
 9
 On June 22, 1988, Fannin testified at the administrative hearing regarding his impairments and his daily activities. His testimony was consistent with the record evidence discussed earlier. Fannin testified that he has a driver's license and that he is able to drive a car. Fannin also testified that he is able to read and write "pretty good." The ALJ asked Fannin if he could perform jobs outside his home, without his family around, which required some housecleaning in an office setting where he would be emptying waste baskets and mopping floors, and Fannin said that he probably could. Fannin also testified that it was not difficult for him to be outside the home.
 
 
 10
 Dr. William Weikel, a vocational expert, also testified at the administrative hearing. Dr. Weikel testified that he found no evidence of Fannin's working outside his home, and that his work in the home did not generate any skills. The ALJ asked Dr. Weikel to assume an individual with Fannin's age, education and work background who has the physical ability to do medium work, who also has a second-grade reading level with an I.Q. in the seventies, and who cannot work at unprotected heights or around open dangerous machinery. Dr. Weikel testified that there would be some unskilled jobs which a person having those limitations could perform. Dr. Weikel testified that such an individual could perform about 5% of the medium, 20 to 25% of the light, and 20 to 30% of the sedentary jobs. Examples of specific jobs identified by Dr. Weikel include those of packers and packagers, assemblers, farm workers, kitchen helpers and janitorial workers. Dr. Weikel testified that there were a significant number of these jobs existing in Kentucky, and even more such jobs existing in Ohio.
 
 
 11
 In a second hypothetical question, Dr. Weikel was asked to assume that the individual described in the previous hypothetical question was also unable to function outside a home atmosphere and required extensive supervision. In response to this hypothetical question, Dr. Weikel testified that such a person "would be limited to sheltered employment, at least sheltered employment initially until the person could make the transition to a competitive setting." J.A. at 55.
 
 
 12
 The ALJ found that the medical evidence established that Fannin has severe mild mental retardation, dependant personality disorder, and an impairment of the digestive system, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Sec. 404, Subpt. P, App. 1. The ALJ determined that Fannin has the residual functional capacity to perform medium work, and that he has nonexertional limitations of reading at the second grade level, an I.Q. in the seventies, and the inability to work at heights or around open dangerous machinery. The ALJ incorporated these impairments into the first hypothetical question, and relying on Dr. Weikel's testimony that there were a significant number of jobs which a person having those limitations could perform, the ALJ concluded that Fannin was not disabled. The principal issue on appeal is whether the Secretary's decision denying benefits is supported by substantial evidence.
 
 II.
 
 13
 The inquiry on review is whether the Secretary's findings are supported by substantial evidence and whether he correctly applied the law. Mullis v. Bowen, 861 F.2d 991, 992-93 (6th Cir.1988). This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987). The fact that the record may also contain substantial evidence to support a conclusion different from that reached by the Secretary is irrelevant. Crisp v. Secretary of Health & Human Serv., 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam).
 
 
 14
 Fannin argues that the ALJ erred by ignoring uncontradicted medical evidence of a disabling mental impairment. Specifically, Fannin argues that Rowe's diagnosis of dependent personality disorder is entitled to complete deference because it is the uncontradicted opinion of a treating physician. Fannin contends that the Secretary's decision is not supported by substantial evidence because the ALJ's first hypothetical question did not include Fannin's dependent personality disorder.
 
 
 15
 The record reveals that the ALJ did not ignore Fannin's dependent personality disorder. In fact, the ALJ specifically evaluated this impairment under 20 C.F.R. 404, Subpt. P., App. 1, Sec. 12.08, and concluded that Fannin's degree of limitation did not meet the requirements of the listing. However, the ALJ's decision denying benefits ultimately rested on the vocational expert's testimony in response to the first hypothetical question. The ALJ did not include limitations associated with Fannin's dependent personality disorder because he concluded that such limitations were not supported by the evidence.
 
 
 16
 The fundamental problem with Fannin's argument is that Rowe's psychological evaluation does not establish that Fannin is disabled by his dependent personality disorder. While Rowe does diagnose the disorder, a psychological or emotional disorder is not per se disabling. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982). "In addition, there must be proof of the impairment's disabling severity." Rhodes v. Schweiker, 660 F.2d 722, 723 (9th Cir.1981). In this case, Rowe does not specifically disagnose the disorder as disabling, and Fannin's testimony and the record evidence regarding his daily activities and his functional abilities support the ALJ's conclusion that he is not disabled.
 
 
 17
 Furthermore, contrary to Fannin's argument, Rowe's opinion is not entitled to substantial deference because Rowe "is not a treating physician given the fact that he evaluated the claimant on only one occasion." Atterberry v. Secretary of Health & Human Serv., 871 F.2d 567, 572 (6th Cir.1989). Moreover, the determination of disability "involves consideration of many factors, only one of which is medical impairment, and it is reserved exclusively to the Secretary or to various state agencies." King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). Thus, even if Rowe, as a treating physician, had determined that Fannin was disabled, that determination would not be binding on the Secretary because the ultimate determination of disability is the prerogative of the Secretary. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985).
 
 
 18
 In Crisp v. Secretary of Health & Human Serv., 790 F.2d 450, 452 (6th Cir.1986) (per curiam), the only evidence of a psychological impairment was the claimant's own testimony and a psychological report completed after only one evaluation of the claimant. The psychologist concluded that the claimant was incapable of engaging in any substantial work activity, but the claimant's testimony regarding his daily activities and abilities did not reveal that he was disabled. Id. We noted the claimant's testimony and the ALJ's opportunity to see the claimant in person, and we held that the ALJ's decision denying benefits was supported by substantial evidence. Id. at 453.
 
 
 19
 In the present case, Fannin's testimony regarding his daily activities and his abilities contradicts the conclusion that he is disabled from engaging in substantial work activity. Rowe states in his report that Fannin and his mother are unreliable as historians, but the ALJ specifically stated in his decision that he found Fannin to be a credible witness. The ALJ's credibility assessment was based on his opportunity to observe Fannin's demeanor at the hearing and on the fact that Fannin's testimony was consistent with past statements made by him regarding his impairments. "Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." Hardaway v. Secretary of Health & Human Serv., 823 F.2d 922, 928 (6th Cir.1987). Because the record evidence and Fannin's testimony regarding his daily activities and abilities do not reveal that he is disabled by his dependent personality disorder, we conclude that the ALJ's decision denying benefits is supported by substantial evidence.
 
 III.
 
 20
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation